IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JESSE RAY LUCAS, | ) | 1:09-CV-1015  AWI DLB |
| | ) | |
| Plaintiffs, | ) | ORDER ON DEFENDANTS' |
| v. | ) | MOTION TO DISMISS |
| | ) | |
| CITY OF VISALIA, et al., | ) | (Doc. No. 33) |
| | ) | |
| Defendants. | ) | |

This is a civil rights lawsuit brought by Plaintiff Jesse Lucas ("Lucas") against Defendants the City of Visalia ("the City"), Visalia police officers Carmen Esparza ("Esparza") and Sean O'Rafferty ("O'Rafferty"), and Taser International, Inc.[1]  In the First Amended Complaint ("FAC"), Lucas alleges violations of 42 U.S.C. § 1983 and various state laws, including products liability.  The City and O'Rafferty now move under Rule 12(b)(6) to dismiss the second and fourth causes of action.  For the reasons that follow, the motion will be granted in part and denied in part.

## BACKGROUND

On May 1, 2008, Lucas's girlfriend called 911 for medical assistance for Lucas, who appeared to have suffered a seizure or a series of seizures.  Lucas has a history of seizures.

---

[1] Visalia Chief of Police Robert Carden was voluntarily dismissed under Rule 41(a)(1).  See Court's Docket Doc. Nos. 23, 27.  Also, Defendants filed a motion to dismiss the original complaint.  The Court granted that motion and in part dismissed the City of Visalia Police Department as a redundant party.  Id. at Doc. No. 29.

1  Personnel from American Ambulance Co. and the Visalia Fire Department arrived at Lucas's
2  residence and conferred with Lucas and his girlfriend. Lucas repeatedly and clearly refused
3  medical treatment and requested that the responding personnel leave his home. Lucas indicated
4  that he had previously suffered one or more seizures and just needed to go to bed. Despite these
5  requests, the responding personnel continued to insist that Lucas receive treatment and called for
6  police assistance. Police officers later arrived at the seen.

7  O'Rafferty arrived first, and the responding personnel advised O'Rafferty that Lucas
8  appeared to be mentally altered and was combative when they were trying to treat him, but he
9  had not injured anyone. O'Rafferty then approached Lucas, who was sitting on the stairs directly
10 inside the front door of his residence, and spoke to him. Lucas continued to refuse treatment and
11 to insist that all personnel leave his home so that he could go to bed. Esparza then arrived and
12 entered the house. Lucas told Esparza the same thing he told O'Rafferty – that he did not want
13 treatment, he wanted all personnel to leave, and that he would go to bed. Lucas then stood up,
14 said that he was going to bed, and that all responding personnel were to leave his home.

15 O'Rafferty and Esparza pursued Lucas up the stairs. As Esparza described in her report,
16 once Lucas reached the second floor landing, he turned around and again told the officers to
17 leave. Esparza ordered Lucas to go back downstairs, but Lucas continued to tell the officers to
18 leave so that he could sleep. Without warning, Esparza then shot Lucas with her taser gun and
19 shocked him. Lucas fell to the ground and Esparza told him to turn over on his stomach and put
20 his hands behind his back. Then, in order to gain compliance, Esparza cycled her taser a second
21 time and again shocked Lucas. O'Rafferty did not intercede to prevent or cease the use of the
22 taser gun by Esparza.

23 The officers then restrained Lucas, took him down the stairs, forcibly strapped him to a
24 gurney, and took him to the hospital against his will. At the hospital, Lucas was arrested. Also,
25 at the hospital, Lucas was administered drug tests, which returned negative.

26
27 **LEGAL FRAMEWORK**
28 Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the

plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see

Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

**DEFENDANTS' MOTION**

Defendants challenge only two of the FAC's causes of action.

**1.      Second Cause of Action – *Monell* Liability**

*Defendants' Argument*

The City argues that the *Monell* allegations remain too conclusory. The new allegations are bereft of facts and are instead merely a list of conclusions. What is lacking is any allegation of what the City actually did or any occasions of a failure to do something. The allegations can

4

be summed up as "the City failed to do what it should have done."

*Plaintiff's Opposition*

Lucas argues that he has alleged the absence of any effective system to investigate and monitor officers regarding excessive force, which resulted in multiple violations of his civil rights. Had the City not tolerated excessive force, Esparza would not have been willing to use her taser during this transaction. Lucas also argues that he has alleged that the City did not adequately train regarding the use of tasers and the proper method of responding to persons with medical emergencies. According to Lucas, he "has alleged a complete lack of any training whatsoever." Had the City instituted the appropriate training and monitoring, Esparza and O'Rafferty would not have violated Lucas's rights.

*Legal Standard*

Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. Monell v. Department of Soc. Servs., 436 U.S. 658, 690 (1978); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Municipal liability under 42 U.S.C. § 1983 may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. See Price v. Sery, 513 F.3d 962, 966 (9th Cir. Or. 2008); Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004); Ulrich v. City & County of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002); Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1995). A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008); Long, 442 F.3d at 1185. A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage

with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990); see also Bouman v. Block, 940 F.2d 1211, 231-32 (9th Cir. 1991). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918; see also McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000).

Additionally, a municipality's failure to train its employees may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989); Long, 442 F.3d at 1186; Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." Long, 442 F.3d at 1186. A plaintiff alleging a failure to train claim must show:  (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those officers. Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007); Lee, 250 F.3d at 681. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, 489 U.S. at 389; Long v. City & County of Honolulu, 511 F.3d 901, 907 (9th Cir. 2007). However, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." City of Canton, 489 U.S. at 391; see also Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989)

Allegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was

6

obvious and the constitutional injury was likely to occur.  See Young v. City of Visalia, 2009 U.S. Dist. LEXIS 72987, *20 (E.D. Cal. Aug. 18, 2009); see also Jackson v. County of San Diego, 2009 U.S. Dist. LEXIS 89753, *8 (S.D. Cal. Sept. 29, 2009); cf. Lee v. City of Los Angeles, 250 F.3d 668, 682 (9th Cir. 2001).

*Discussion*

The Court sees three general policies/practices alleged under the second cause of action.

Paragraphs 28 through 31 of the FAC focus on policies regarding excessive force.[2] Lucas identifies the policy/custom as "failing to maintain a proper system for investigating and monitoring those officers who have been charged with use of excessive and unreasonable force." FAC ¶ 29.  Lucas then identifies the shortcomings of the system as: (1) not following up and investigating all claims of excessive force against police officers; (2) not conducting thorough investigations of excessive force claims; (3) not removing officers from their duties until a thorough investigation has been conducted and completed; (4) not continuing to monitor officers against whom excessive force complaints have been made; and (5) not removing from active duty officers who were found to have used excessive force.  See id.; see also ¶ 30.  The FAC then alleges that the absence of appropriate investigation and monitoring allows questionable officers to remain on duty and sends the message that unreasonable force complaints will not be taken seriously.  See id. at ¶ 31.  Lastly, Lucas alleges that, had the City implemented monitoring and investigation practices, Esparza and O'Rafferty would have been more sensitive to excessive force issues and would not have used excessive force on Lucas.  See id.  The Court believes that Paragraph 31 adequately describes the dangers of not monitoring or investigating excessive force claims.  Considering how frequently police officers are called upon to utilize force, the absence of policies/practices regarding monitoring the use excessive force could amount to deliberate indifference.  Further, given the allegations of the officers' conduct, especially Esparza's, monitoring and investigation reasonably may have made the officers more sensitive to Lucas's Fourth Amendment rights.  Viewing the allegations in the light most favorable to Lucas,

---

[2] In opposition, Lucas groups paragraphs 28 through 31 together.  See Court's Docket Doc. No. 35 at 2:24-26.  The Court will view paragraphs 28 through 31 as alleging one policy/custom.

7

Paragraphs 28-31 of the FAC adequately allege a *Monell* claim. See Marceau, 540 F.3d at 919; Young, 2009 U.S. Dist. LEXIS 72987 at *20.

Paragraph 32 deals with the use of tasers. The practice identified is the City's training and instruction regarding the use of "electrical stun weapons." See FAC at ¶ 32. The deficiencies identified are failing to instruct officers about: (1) the dangers of using tasers on, and administering multiple taser shocks to, persons with a history of episodic seizures; and (2) the appropriateness of using a taser on someone who refuses to receive medical treatment.[3] See id. Paragraph 32 alleges that, had the City provided training on any one of these subjects, Lucas would not have been shocked. See id. The reasonable inference from the allegation is that training on any of the identified subjects would have shown that shocking Lucas would have been "contraindicated." If the training shows that shocking was contraindicated, then it is probable that Lucas would not have been injured. This sufficiently shows how Lucas was harmed by the absence of training. Similarly, the inference that it is inappropriate to shock someone who simply refuses medical treatment, also could show deliberate indifference. Police officers encounter many different persons in a variety of situations. As illustrated by this case, it is foreseeable that police officers will often deal with persons who need or appear to need medical treatment. The absence of training regarding individuals who refuse medical treatment, like the absence of monitoring, investigating, and discipline for excessive force, could indicate deliberate indifference. Lucas has stated a *Monell* claim regarding the absence of training about the appropriateness of using a taser on someone who refuses to receive medical treatment. See Young, 2009 U.S. Dist. LEXIS 72987 at *20.

However, it is not apparent to the Court that the absence of training regarding shocking individuals with episodic seizures amounts to deliberate indifference. Lucas is focusing on a

---

[3] The allegations in the FAC actually read, "failed to properly apprise and instruct." See FAC ¶ 32. Using the term "properly" is ambiguous. The allegation of "properly" could mean the complete absence of training on the subject or it could mean that some training occurred, but that training was somehow erroneous or deficient in a particular aspect. However, at the end of Paragraph 32, Lucas alleges that, because Defendants have not responded to document requests for training materials, this "further supports the fact that no such training was provided." Id. Also, Lucas in opposition has clarified that he "has alleged a complete lack of training whatsoever." See Opposition at 4:27-28. In light of the last sentence of Paragraph 32 and Lucas's opposition, the allegations that the City "failed to properly apprise and instruct" will be read to mean "did not apprise and instruct."

8

very specific medical condition.  There are myriad medical conditions that may afflict a given person/suspect, and it is not reasonable to expect police officers to be trained as to every condition.  It may well be that officers should be trained regarding taser use on persons with known seizure disorders, but additional allegations are necessary to show deliberate indifference.  By way of example, an allegation that the City knew that its officers would likely encounter individuals who experience episodic seizures, knew that shocking such individuals involved a significant risk of injury/danger, and yet chose not to train on the issue could show deliberate indifference.[4]  Since it is not clear that amendment would be futile, the Court will dismiss with leave to amend the *Monell* claim that is based on the absence of training regarding the dangers of using tasers on, and administering multiple taser shocks to, persons with a history of episodic seizures.[5]

Finally, Paragraph 33 deals with medical emergencies.  The policy/practice identified is the training and supervision of police officers regarding conduct towards persons who have a reported medical emergency, but have refused treatment.  See FAC ¶ 33.  The deficiencies identified are the failure to train and instruct about: (1) how to properly identify individuals who exhibit signs of episodic seizures; (2) how to properly handle an individual when the officers have been informed that the individual has a history of episodic seizures; (3) how to identify individuals who exhibit signs of seizures and/or epilepsy; (4) how to properly handle individuals who refuse medical treatment; and (5) how to properly handle an individual who refuses medical treatment when the officers have been informed that the individual has a history of epilepsy or episodic seizures.  See id.[6]  Lucas alleges that he would not have been injured by Esparza and

---

[4] The Court emphasizes that this is just an example and other allegations may show deliberate indifference.

[5] Specifically, the dismissal is in relation to the deficiencies identified in subsections (1) and (2) of Paragraph 32.

[6] Similar to Paragraph 32, Paragraph 33 actually alleges the City "failed to adequately train and instruct." See FAC ¶ 33.  Also like Paragraph 32, the end of Paragraph 34 (which relates to the allegations in Paragraph 33) alleges that, because Defendants have not responded to document requests for training materials, this "further supports the fact that no such training was provided."  Id.  Finally, again, Lucas in opposition has clarified that he "has alleged a complete lack of training whatsoever."  See Opposition at 4:27-28.  In light of the last sentence of Paragraph 34 and Lucas's opposition, the allegations that the City "failed to adequately train and instruct" will be read to mean that the City "did not train and instruct."  See Footnote 3 *supra.*

9

O'Rafferty if the City had trained them in the above areas. See id. at ¶ 34. The reasonable inference from the allegation is that training on any of the identified subjects would have shown that Esparza and O'Rafferty's handling of Lucas, i.e. tasering him and forcing him onto the gurney and taking him to the hospital against his will, would have been "contraindicated." If the training shows that the officers' conduct was contraindicated, then it is probable that Lucas would not have been shocked, strapped, and transported against his will. This sufficiently shows how Lucas was harmed by the absence of training. Also, like the discussion above, it is foreseeable that police officers will often deal with persons who need or appear to need medical treatment. The absence of training regarding how to handle individuals who refuse apparently needed medical treatment could indicate deliberate indifference. Lucas has stated a *Monell* claim in relation to the absence of training about how to deal with persons who refuse to receive medical treatment. See Young, 2009 U.S. Dist. LEXIS 72987 at *20.

However, also like Paragraph 32, it is not apparent to the Court that the absence of training regarding individuals with known or suspected episodic seizures and/or epilepsy amounts to deliberate indifference. Lucas is again focusing on a very specific medical condition. At this point, it is simply unclear why or how the absence of training on this very particular issue amounts to deliberate indifference. Just like the Court's above discussion regarding Paragraph 32, more allegations are needed to show deliberate indifference. Since it is not clear that amendment would be futile, the Court will dismiss with leave to amend the *Monell* claim that is based on the absence of training regarding how to handle individuals with known or suspected episodic seizures or epilepsy.[7]

### 2. **Fourth Cause of Action – Intentional Infliction of Emotional Distress**

*Defendants' Argument*

O'Rafferty argues that the allegations in the prior complaint were deemed insufficient because he was alleged to have "promoted" and "encouraged" the use of the Taser and failed to

---

[7] Specifically, the dismissal is in relation to the deficiencies identified in subsections (1), (2), (3), (4), and (6) of Paragraph 33.

10

"intercede." The FAC is no more enlightening on the acts or failure to act.

*Plaintiff's Opposition*

Lucas argues that O'Rafferty misconstrues the prior dismissal order. The prior order found that the allegations that O'Rafferty forcibly took Lucas to the hospital were sufficient to state a claim. Further allegations have been added to assert additional outrageous conduct. Specifically, that he acted outrageously when he failed to "intercede to prevent or cease the further use of the Taser gun by[Esparza] before she cycled the Taser for the second time." Permitting his partner to shock Lucas exceeds all bounds of decency.

*Relevant Allegation*

The FAC at paragraph 45 reads:

> The conduct of [Esparza and O'Rafferty] was outrageous. [Esparza and O'Rafferty] entered [Lucas's] home without his consent, despite his protests, and without any reasonable cause. [Esparza and O'Rafferty] were responding to a medical treatment call, and were not attempting to make a reasonable arrest. [Lucas] refused medical treatment, but [Esparza] used her Taser to shock [Lucas] into complying with her orders. [O'Rafferty] witnessed the first use of the Taser on [Lucas], and did not intercede to prevent or cease the further use of the Taser gun by [Esparza] before she cycled the Taser for the second time. Indeed, [O'Rafferty] encouraged, promoted, and/or silently permitted the use of the Taser.

*Legal Standard*

The elements of the tort of a claim for Intentional Infliction of Emotional Distress ("IIED") are: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. See Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009); Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993). "'Severe emotional distress' means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." Hughes, 46 Cal.4th at 1051; Potter, 6 Cal.4th at 1004. Conduct is "extreme and outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Hughes, 46 Cal.4th at 1050; Potter, 6 Cal.4th at 1001. In contrast, "[l]iability for [IIED] does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Hughes, 46

Cal.4th at 1051. Further, the outrageous conduct must be "directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." <u>Christensen v. Superior Court</u>, 54 Cal.3d 868, 903 (1991).

*Discussion*

In the Court's previous dismissal order, the Court dismissed the entire IIED cause of action because the Complaint did not allege "severe emotional distress." <u>See</u> Court's Docket Doc. No. 29. Prior to this dismissal, the Court found that the allegations sufficiently alleged outrageous conduct by Esparza. <u>See</u> <u>id.</u> After discussing Esparza, the Court stated the following about O'Rafferty:

> With respect to O'Rafferty, the same is true of his conduct in forcibly taking Lucas to the hospital, i.e. entering the home, forcibly removing Lucas from his home, and forcibly strapping Lucas onto the gurney for transportation to the hospital, all against Lucas's protestations, is sufficiently outrageous.
>
> O'Rafferty's conduct regarding the taser application is different. O'Rafferty did not fire the taser at Lucas. The Complaint alleges that O'Rafferty "did not intercede to prevent or cease the use of the taser by [Esparza]. Indeed, O'Rafferty encouraged, promoted, and/or silently permitted the use of the taser . . . ." Complaint at ¶ 20. There is no other explanation as to how O'Rafferty "encouraged" or "promoted" the use of the taser. His failure to "intercede" does support the allegation that he "silently permitted the use of the taser." However, not interceding to stop a taser application is in the nature of an omission rather than an affirmative act. Lucas has cited no cases in which a failure to prevent a particular action by a third party was a sufficient basis for an IIED claim. In the absence of further clarifying allegations and/or citation to on-point case law, O'Rafferty's failure to stop Esparza from tazing Lucas is merely a silent omission and is not sufficiently outrageous to support an IIED claim.

<u>Id.</u> What the Court was attempting to say was that the Complaint had alleged sufficiently outrageous conduct by O'Rafferty, but that outrageous conduct did not include passively allowing Esparza to use her taser against Lucas.

Paragraph 45 of the FAC in relation to O'Rafferty essentially reiterates Paragraph 20 of the original complaint. Because there is nothing materially new in Paragraph 45, the Court's above analysis of the Complaint applies to the FAC. The FAC adequately alleges "egregious conduct" and states an IIED claim based on O'Rafferty forcibly taking Lucas to the hospital, i.e. entering the home, forcibly removing Lucas from his home, and forcibly strapping Lucas onto the gurney for transportation to the hospital, all against Lucas's protestations. Dismissal of an IIED claim based on this conduct by O'Rafferty is inappropriate.

12

With respect to the ues of the taser, however, Lucas has again alleged only inaction by O'Rafferty, which is not sufficient. The Court previously noted the lack of authority for the proposition that a failure to prevent conduct by a third party was a sufficient basis for an IIED claim. See id. Lucas has cited no authority that supports this proposition.[8]

The Court has recently found confirmation for its view that O'Rafferty's inaction does not constitute "egregious conduct" under IIED. In *Davidson v. City of Westminster*, 32 Cal.3d 197, 201 (1982), police officers staked out a laundromat that had been the site of several stabbings. The officers planned only to intervene once the suspect had sufficiently committed himself to an assault. See id. at 210. Regrettably, the officers did not intervene until Davidson had actually been stabbed. See id. at 201, 210. Davidson filed suit against the officers and their municipal employer for, *inter alia*, IIED. See id. The California Supreme Court noted that the police may have engaged in "poor police procedure" and waited too long before becoming active participants, but such conduct was not actionable under IIED. See id. at 210. "Absent an intent to injure, such inaction is not the kind of 'extreme and outrageous conduct' that gives rise to liability under the 'intentional infliction of emotional distress' tort." Id. The Comment to BAJI § 12.74 cited *Davidson* for the proposition that "[i]naction by a defendant, no matter how egregious under the circumstances, does not constitute extreme and outrageous conduct unless the defendant intended to cause injury to the plaintiff." Comment to BAJI California Jury Instructions – Civil § 12.74 (Fall 2009). Accordingly, the Court gleans the following rule from *Davidson*: inaction by a defendant does not constitute "extreme and outrageous behavior" for purposes of IIED unless the defendant intends to cause injury to the plaintiff through the inaction. See Davidson, 32 Cal.3d at 210; see also Comment to BAJI § 12.74.

Here, there is no indication that O'Rafferty intended to injure Lucas through inaction. The factual allegations simply show that O'Rafferty passively failed to intervene, i.e. is guilty of mere inaction. Cf. Davidson, 32 Cal.3d at 210; see also Comment to BAJI § 12.74. For the second time, Lucas has failed to allege a viable IIED claim against O'Rafferty based on

---

[8]Lucas does cite to *Hughes*, but that case is unhelpful. The conduct at issue in *Hughes* was express statements, not passive inaction, and those statements were found to be insufficiently outrageous. See Hughes, 46 Cal.4th at 1040, 1051.

13

O'Rafferty's failure to intervene. Nevertheless, in the previous dismissal, the Court did not clearly express the law relating to inaction and IIED. As such, it is not clear that amendment to allege an intent to injure would be futile. If Lucas, consistent with Federal Rule of Civil Procedure 11, can allege that O'Rafferty was inactive because he intended for Lucas to be <u>injured</u>, then Lucas may amend.

## **CONCLUSION**

Defendants have moved to dismiss the second and fourth causes of action. With respect to the second cause of action for *Monell* liability, Lucas's claims are sufficient regarding the City's: (1) failure to monitor, investigate and discipline officers in relation to excess force; (2) failure to train officers regarding the use of tasers against an individual who simply refuses medical treatment; and (3) failure to train officers how to deal with individuals who refuse medical treatment. *Monell* claims based on these deficient policies/practices will not be dismissed. However, Lucas has not adequately alleged that the City's failure to train officers regarding "general interaction with," and use of tasers against, individuals with known or suspected epilepsy/seizures amounts to deliberate indifference. *Monell* claims based on these deficient policies/practices will be dismissed with leave to amend.

With respect to the fourth cause of action for IIED, Lucas has sufficiently alleged an IIED claim against O'Rafferty based on O'Rafferty's entering Lucas's home, forcibly removing Lucas from his home, and forcibly strapping Lucas onto the gurney for transportation to the hospital. Dismissal of that claim is not appropriate. However, since there is no allegation or reasonable indication that O'Rafferty's inaction, i.e. failing to intercede to prevent Esparza from using a taser against Lucas, was intended to injure Lucas, the inaction is not "egregious conduct." Any IIED claim that is based on the inaction of O'Rafferty will be dismissed with leave to amend.

Accordingly, IT IS HEREBY ORDERED that Defendants' motion to dismiss is:
1. DENIED with respect to *Monell* claims under the second cause of action that are based on: (1) failure to monitor, investigate and discipline officers in relation to excess force;

   (2) failure to train officers regarding the use of tasers against an individual who simply refuses medical treatment; and (3) failure to train officers how to deal with individuals who refuse medical treatment;

2. GRANTED with leave to amend with respect to *Monell* claims under the second cause of action based on the City's failure to train officers regarding "general interaction with," and use of tasers against, individuals with known or suspected epilepsy/seizures;[9]

3. DENIED with respect to intentional infliction of emotional distress claims under the fourth cause of action that are based on O'Rafferty's entering Lucas's home, forcibly removing Lucas, and forcibly strapping Lucas onto the gurney for transportation to the hospital;

4. GRANTED with leave to amend with respect to an intentional infliction of emotional distress claim under the fourth cause of action that is based on O'Rafferty's failure to intercede to prevent Esparza from using her taser against Lucas;

5. Lucas may file a Second Amended Complaint, consistent with this order, within fourteen (14) days of service of this order; and

6. If Lucas fails to timely amend the FAC, Defendants are to file an answer to the FAC within twenty-one (21) days of service of this order.

IT IS SO ORDERED.

Dated:   April 8, 2010                                  /s/ Anthony W. Ishii
                                                CHIEF UNITED STATES DISTRICT JUDGE

---

[9] To ensure clarity, the Court reiterates that *Monell* liability based on subsections (1) and (2) of Paragraph 32, and subsections (1), (2), (3), (4), and (6) of Paragraph 33 are dismissed.