IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JESSE RAY LUCAS, | ) | 1:09-CV-1015  AWI DLB |
| | ) | |
| **Plaintiffs**, | ) | ORDER ON TASER |
| **v.** | ) | INTERNATIONAL'S RULE |
| | ) | 12(b)(6) MOTION TO DISMISS |
| CITY OF VISALIA, et al., | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | (Doc. No. 42) |
| _____ | ) | |

This is a civil rights lawsuit brought by Plaintiff Jesse Lucas ("Lucas") against
Defendants the City of Visalia ("the City"), Visalia police officers Carmen Esparza ("Esparza")
and Sean O'Rafferty ("O'Rafferty"), and Taser International, Inc. ("Taser Int."). Lucas alleges
violations of 42 U.S.C. § 1983 and various state laws, including products liability. The Court
granted in part and denied in part two prior motions to dismiss that had been filed by the City and
its officers. The active complaint is the Second Amended Complaint ("SAC"). Taser Int. now
moves under Rule 12(b)(6) to dismiss the ninth and tenth causes of action. For the reasons that
follow, the motion will be granted in part and denied in part.


**BACKGROUND**

From the SAC, it is alleged that Lucas's girlfriend called 911 for medical assistance for
Lucas, who appeared to have suffered a seizure(s). Lucas has a history of seizures. Personnel
from American Ambulance Co. and the Visalia Fire Department arrived at Lucas's residence and

conferred with Lucas, who repeatedly and clearly refused medical treatment and requested that the everyone was to leave his home.  Lucas indicated that he had previously suffered one or more seizures and just needed to go to bed.

Police officers later arrived.  O'Rafferty arrived first, and he was advised that Lucas appeared to be mentally altered, was combative when treatment was attempted, but he had not injured anyone.  O'Rafferty then approached Lucas, who was sitting on the stairs directly inside the front door of his residence, and spoke to him.  Lucas continued to refuse treatment and to insist that all personnel leave his home so that he could go to bed.  Esparza then arrived and entered the house.  Lucas told Esparza the same thing he told O'Rafferty – that he did not want treatment, he wanted all personnel to leave, and that he would go to bed.  Lucas then stood up, said that he was going to bed, and that everyone was to leave his home.

O'Rafferty and Esparza pursued Lucas up the stairs.  Once Lucas reached the second floor landing, he turned around and again told the officers to leave.  Esparza ordered Lucas to go back downstairs, but Lucas continued to tell the officers to leave so that he could sleep.  Without warning, Esparza then shot Lucas with her taser gun and shocked him.  Lucas fell to the ground and Esparza told him to turn over on his stomach and put his hands behind his back.  Then, in order to gain compliance, Esparza cycled her taser a second time and again shocked Lucas. Lucas sustained significant injuries from the taser applications.


## RULE 12(b)(6) FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075,

1077 (9th Cir. 1999).  The Court must also assume that general allegations embrace the

necessary, specific facts to support the claim.  <u>Smith v. Pacific Prop. and Dev. Corp.</u>, 358 F.3d

1097, 1106 (9th Cir. 2004); <u>Peloza v. Capistrano Unified Sch. Dist.</u>, 37 F.3d 517, 521 (9th Cir.

1994).  But, the Court is not required "to accept as true allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences."  <u>In re Gilead Scis. Sec. Litig.</u>, 536

F.3d 1049, 1056-57 (9th Cir. 2008); <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th

Cir. 2001).  Although they may provide the framework of a complaint, legal conclusions are not

accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere

conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949-50 (2009); <u>see</u>

<u>also</u> <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003).   Furthermore,

Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the

defendants have violated . . . laws in ways that have not been alleged."  <u>Associated General</u>

<u>Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526

(1983).  As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his
> 'entitlement to relief' requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations must
> be enough to raise a right to relief above the speculative level, on the assumption
> that all the allegations in the complaint are true (even if doubtful in fact).

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Thus, to "avoid a Rule 12(b)(6)

dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face."  <u>Iqbal</u>, 129 S.Ct. at 1949; <u>see</u> <u>Twombly</u>, 550 U.S. at 570; <u>see</u>

<u>also</u> <u>Weber v. Department of Veterans Affairs</u>, 521 F.3d 1061, 1065 (9th Cir. 2008).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S.Ct. at

1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks
> more than a sheer possibility that a defendant has acted unlawfully.  Where a
> complaint pleads facts that are 'merely consistent with' a defendant's liability, it
> stops short of the line between possibility and plausibility of 'entitlement to
> relief.'
> . . .

3

1

> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to amend need not be granted when amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

**DEFENDANT'S MOTION**

1.   Tenth Cause of Action – Strict Products Liability, Manufacturing and Design Defects

*Defendant's Argument*

Taser Int. argues that the tenth cause of action for "design and/or manufacturing defects" rests entirely on conclusory allegations.  The allegations generally track the legal elements for strict liability, but there are no facts pled that identify what aspect of the product makes it defective.  Nothing identifies how the product deviated from Taser Int.'s specifications or identifies a specific design defect.

*Plaintiff's Opposition*

Lucas argues that his strict products liability claim has been properly pled.  The SAC alleges that Taser Int. manufactured, inspected, tested, marketed, etc. the subject taser weapon, that the weapon contained "design and/or manufacturing defects," and that the defects were the proximate cause of Lucas's injuries.  Lucas also argues that he alleges that the taser weapon is unreasonably dangerous because it is sold without adequate warnings.  Also, Lucas argues that Taser Int.'s motion is dilatory since Taser Int. did not file a motion to dismiss prior complaints

4

that contained the sane allegations.

*Legal Standard*

California recognizes strict liability for three types of product defects – manufacturing defects, design defects, and warning defects (inadequate warnings or failure to warn).  Anderson v. Owens-Corning Fiberglass Co., 53 Cal.3d 987, 995 (1991); Karlsson v. Ford Motor Co., 140 Cal.App.4th 1202, 1208 (2006).

Under the "design defect" theory, a design is defective in one of two ways.  Soule v. General Motors Corp., 8 Cal.4th 548, 566-67 (1994); Karlsson, 140 Cal.App.4th at 1208.  First, under the "consumer expectations test," a product's design is defective if it has failed to perform as safely as its ordinary consumers would expect when used in an intended or reasonably foreseeable manner.  Barker v. Lull Engineering Co., 20 Cal.3d 413, 430 (1978); Karlsson, 140 Cal.App.4th at 1208; see also Soule, 8 Cal.4th at 562, 566.  Second, under the "risk-benefit test," a product's design is defective if the design embodies "excessive preventable danger," that is, the risk of danger inherent in the design outweighs the benefits of such design.  Barker, 20 Cal.3d at 430; Ford v. Polaris Industries, Inc., 139 Cal.App.4th 755, 766 (2006); see also Soule, 8 Cal.4th at 562, 567.  California courts have explained that:

> [T]he consumer expectations test is properly applied in cases in which the everyday experience of the product's users permits a conclusion that the product's design violated minimum safety assumptions, and is thus defective regardless of expert opinion about the merits of the design. In contrast, the test should not be used when the ultimate issue of design defect calls for a careful assessment of feasibility, practicality, risk, and benefit, since in many instances it is simply impossible to eliminate the balancing or weighing of competing considerations in determining whether a product is defectively designed or not.

Jones v. John Crane, Inc., 132 Cal.App.4th 990, 1002 (2005) (quotations omitted) (citing Soule, 8 Cal.4th at 562-63, 567).  "The two tests provide alternative means for a plaintiff to prove design defect and do not serve as defenses to one another."  McCabe v. American Honda Motor Co., Inc., 100 Cal.App.4th 1111, 1121 (2002).

Under the "manufacturing defect" theory, generally a "manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line."

5

Barker, 20 Cal. 3d at 429; In re Coordinated Latex Glove Litigation, 99 Cal. App. 4th 594, 605 (2002).  The "manufacturing defect" theory posits that "a suitable design is in place, but that the manufacturing process has in some way deviated from that design."  In re Coordinated Latex, 99 Cal.App.4th at 613.

*Discussion*

Initially, the Court is not persuaded by Lucas's point that Taser Int. answered prior complaints that contained the same allegations in the SAC.  Taser Int.'s prior answers contained the affirmative defense that the complaint failed to state a claim.  See Court's Docket Doc. Nos. 16 (at ¶ 80), 32 (at ¶ 94).  A defense of "failure to state a claim upon which relief may be granted" may be asserted in an answer, through a Rule 12(b)(6) motion to dismiss, through a Rule 12(c) motion, or at trial.  See Fed. R. Civ. Pro. 12(b), (h)(2).  The operative complaint is the SAC, not the original or first amended complaints.  That Taser Int. chose to utilize a Rule 12(b)(6) motion regarding the SAC, instead of filing an answer and expressly pleading the defense, is proper.  See Fed. R. Civ. Pro. 12(h)(2).

As for the substance of the tenth cause of action, the Court agrees with Taser Int.'s assessment.  The relevant allegation of the tenth cause of action is Paragraph 86, which reads in part:  "[Taser Int.] designed, manufactured, sold, distributed . . . the subject Taser ordnance which contained design and/or manufacturing defects, which were capable of causing, and in fact did cause, personal injuries to people while being used in a manner reasonably foreseeable . . . ."  SAC ¶ 86.  The problem with the allegation is that it simply tracks the general elements of strict products liability and contains not pertinent factual allegations.  "What is conspicuously absent from these claims is an identification of what aspect of the [taser weapon] makes [its] design," or manufacture, defective.  Altman v. HO Sports Co., 2009 U.S. Dist. LEXIS 108971, *23 (E.D. Cal. Nov. 19, 2009).

If Lucas intends to allege a manufacturing defect, he must *identify/explain how* the taser weapon either deviated from Taser Int.'s intended result/design or *how* the taser weapon deviated from other seemingly identical taser models.  See Barker, 20 Cal. 3d at 429; In re Coordinated Latex, 99 Cal.App.4th at 605, 613.  A bare allegation that the taser weapon had "a manufacturing

6

1    defect" is an insufficient legal conclusion.  Iqbal, 129 S.Ct. at 1949-50.

2          If Lucas intends to allege a design defect claim, he should identify which design defect

3    theory he wishes to utilize.  Under the consumer expectations test, Lucas "should *describe how*

4    the [taser weapon] failed to meet the minimum safety expectations of an ordinary consumer" of

5    taser weapons.  Altman, 2009 U.S. Dist. LEXIS 108971 at *23 (emphasis added); Barker, 20

6    Cal.3d at 430; Karlsson, 140 Cal.App.4th at 1208.  Under the risk-benefits test, Lucas should

7    allege that the risks of the design outweigh the benefits, and then "*explain how* the particular

8    design of the [taser weapon] caused [Lucas] harm."  See Altman, 2009 U.S. Dist. LEXIS 108971

9    at *23-*24 (emphasis added).  Again, a bare allegation that the taser weapon suffered from a

10   "design defect" is an insufficient legal conclusion.  Iqbal, 129 S.Ct. at 1949-50.

11         Dismissal of tenth cause of action is appropriate because the complaint contains no

12   factual allegations that identify what aspect of the subject taser's design and manufacture made it

13   defective.  Since it is not clear that amendment would be futile, the Court will dismiss the SAC

14   with leave to amend.[1]

15   2.    <u>Ninth Cause of Action – Negligence Products Liability, Warning Defect</u>

16         *Defendant's Argument*

17         Taser Int. argues that no facts support a determination that it failed to warn the City or

18   that a failure to warn caused injury.  Instead, the SAC alleges that Taser Int. provided the very

19   warnings upon which Lucas basis his claim.  The SAC alleges that Taser Int. informed the City

20   that taser weapons:  can cause strong muscle contractions, can adversely affect persons at risk for

21   seizures, there are neuro-electrical risks associated with their use, and there is a risk that

22   repetitive electrical stimuli can induce seizures in some individuals.  Despite this allegation,

23   Lucas then alleges that the taser weapon is defective because it is sold without warnings as to the

24   effects of multiple shocks and shocking people who might suffer from seizures or neurological

25

26         [1] Additionally, Lucas's opposition mentions allegations that deal with a failure to warn.  However, as the
     Court reads the tenth cause of action, the Court sees only claims for manufacturing and design defects.  See SAC at ¶
27   86.  If Lucas intends to allege a strict liability claim for inadequate warnings, see, e.g., Schwoerer v. Union Oil Co.,
     14 Cal.App.4th 10 111 (1993), then he should amend the tenth cause of action to expressly include that claim.  Any
28   claim for strict liability inadequate warning must include factual allegations that explain *how* the subject warning is
     inadequate.  Altman, 2009 U.S. Dist. LEXIS 108971 at *23-*25; Johnson v. American Standard, Inc., 43 Cal.4th 56,
     64-67 (2008).

                                               7

1   conditions.  Because Lucas alleges that Taser Int. did in fact give warnings, it cannot maintain a

2   failure to warn products liability claim.

3   *Plaintiff's Opposition*

4          Lucas argues that the SAC does not allege the absence of any warning, rather it alleges

5   the presence of inadequate warnings.  Although each taser weapon contains a cursory warning

6   regarding neuro-electrical risks, the warning is not adequate.  Taser was in possession of

7   documentation and research regarding the risks of using taser weapons on persons with

8   neurological or seizure disorders, but did not provide that information to Visalia.  The SAC

9   identifies this information.[2]  The brief warning about "repetitive stimuli" merely indicates that

10  taser weapons may cause seizures, it does not clearly warn against use of taser weapons on

11  someone who has just had a seizure or someone who is known to have a seizure disorder.

12  *Relevant Allegations*

13         Under the ninth cause of action, Lucas alleges:

14         . . . [Taser Int. was] engaged in the business and profession of designing,
           manufacturing, selling . . . Taser electronic shock weapons which [Taser Int.]
15         knew, or in the exercise of reasonable care should have known, would be used
           without inspection for defects or dangers in their parts, mechanisms, or design.
16         Defendants' product is unreasonably dangerous and defective for use on human
           beings because, among other reasons, it is sold without warnings as to the effect
17         of multiple shocks, the damage of shocking people who have suffered or
           potentially might have suffered seizures or other medical emergencies, and the
18         effects of Taser shocks on individuals who have or possibly may have suffered
           from neurological conditions which have impaired their functioning.

19
           [Taser Int.] sold Taser ordnance to local law enforcement without adequate
20         warning of or training in its potential for causeing death and great bodily injury.

21  SAC ¶¶ 79-80.

22  _____

23         [2]Specifically, Lucas points out a portion of Paragraph 32, which reads:
    In addition, available literature regarding the use of Taser devices, including literature contained in documents
    produced by [Taser Int.] in this case, contained warnings regarding the use of Taser devices on individuals with
24  neurological issues.  For example, a 1998 document published by the International Association of Chiefs of Policy
    states as follows regarding the use of Electronic Restraint Devices ("ERD"): "[P]ersons with known neuromuscular
25  disorders should be excluded, as should persons with neurological diseases such as muscular sclerosis, muscular
    dystrophy, epilepsy, or persons known to be wearing pacemakers or other biomedical devices sensitive to electrical
26  current.  Use of the ERD on such individuals may easily result in serious injury or death.  Employment of an ERD on
    such individuals may also result in civil liability for the department and officers involved.  Of course, complete
27  knowledge on the presence of any of these conditions among persons confronted by the police is normally not
    available.  But, if responding officers know of or suspect the presence of any of these conditions, as a precautionary
28  measure, the ERD should not be employed."  Such warnings have been incorporated into other law enforcement
    agency procedures, but they are not incorporated into the procedures of the Visalia Police Department.

Under the second cause of action for *Monell* liability, Lucas alleges that the City failed to properly: (1) apprise and instruct its officers of the dangers associated with administering multiple shocks on individuals who have a history of episodic seizures; (2) apprise and instruct officers on the dangers associated with administering multiple shocks on individuals who have a history of seizures; and (3) instruct officers on the appropriateness of using a taser weapon when an individual refuses only to receive medical treatment.  See SAC ¶ 32.  The SAC continues:

> In addition, the City's own Taser training manual omits any mention of the danger of using Tasers on persons with known epilepsy or seizure disorders, despite the fact that Taser has provided materials to the City enumerating these dangers. Taser's informational materials, which were produced by the City during discovery, state that, "the Taser device can cause strong muscle contractions" and contains a specific "Seizure Risks" section stating that the use of a Taser can adversely affect persons at risk for seizures.  *The City received these warnings from Taser, and was aware of the dangers inherent in using Tasers on persons known to suffer from episodic seizures.*  Furthermore, the product warning on each Taser device specifically warns of the neuro-electrical risks associated with the use of Tasers.  The warning states: "Seizure Risks.  Repetitive stimuli such as flashing lights or electrical stimuli can induce seizures in some individuals.  The risk is heightened if electrical stimuli or current passes through the head region." The City thus knew that officers were likely to encounter individuals who experienced episodic seizures and that shocking such individuals with Tasers involved a significant risk of injury and danger.  Yet it still chose not to train officers on this issue. . . .

Id. (emphasis added); see also ¶ 33 (containing nearly identical allegations as ¶ 32).

*Legal Standard*

A "plaintiff may seek recovery in a 'products liability case' either 'on the theory of strict liability in tort or on the theory of negligence.'"  Merrill v. Navegar, Inc., 26 Cal. 4th 465, 478 (2001).  "[F]ailure to warn in strict liability differs markedly from failure to warn in the negligence context."  Carlin v. Superior Court, 13 Cal.4th 1104, 1112 (1996); Anderson v. Owens-Corning Fiberglass Corp., 53 Cal.3d 987, 1002 (1991).  Under a negligence theory, the "manufacturer has a duty to use reasonable care to give warning of the dangerous condition of the product or of facts which make it likely to be dangerous to those whom he should expect to use the product or be endangered by its probable use, if the manufacturer has reason to believe that they will not realize its dangerous condition."  Artiglio v. General Electric Co., 61 Cal.App.4th 830, 835 (1998); Putensen v. Clay Adams, Inc., 12 Cal.App.3d 1062, 1076-77 (1970).  In other words, "[n]egligence law in a failure-to-warn case requires a plaintiff to prove

1 that a manufacturer or distributor did not warn of a particular risk for reasons which fell below

2 the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known

3 and warned about."  Carlin, 13 Cal.4th at 1112; Anderson, 53 Cal.3d at 1002.  In contrast, "the

4 reasonableness of the [manufacturer's] failure to warn is immaterial" under a strict liability

5 theory.  Carlin, 13 Cal.4th at 1112; Anderson, 53 Cal.3d at 1002.  A plaintiff must show that a

6 manufacturer failed to give an adequate warning, and whether a warning is adequate is generally

7 a question of fact for a jury. See Schwoerer v. Union Oil Co., 14 Cal.App.4th 103, 111 (1993);

8 Judicial Council of California, Civil Jury Instructions (CACI) § 1222.  However, a manufacturer

9 is under no duty to warn against obvious or generally known and recognized dangers.  See

10 Krawitz v. Rusch, 209 Cal.App.3d 957, 966 (1989); Holmes v. J.C. Penney Co., 133 Cal.App.3d

11 216, 220 (1982).

12     *Discussion*

13        It is possible to read the ninth cause of action as alleging both the complete absence of

14 warnings regarding "seizure risks," as well as alleging inadequacy of warnings that were actually

15 given.  However, Lucas's opposition clarifies that he is not alleging the complete absence of a

16 warning, rather he is alleging that warnings given by Taser Int. were inadequate.  Since this is a

17 reasonable reading of the ninth cause of action, see SAC ¶ 80, the Court will construe the ninth

18 cause of action as alleging only inadequate warnings, not the complete absence of any warnings.[3]

19        With this understanding of the ninth cause of action, the Court cannot dismiss the claim.

20 There appears to be tension between Paragraph 32[4] of the second cause of action and Paragraph

21 79 of the ninth cause of action.  Paragraph 32 states that the City knew of the various seizure

22 risks because Taser Int. specifically gave the City "informational materials" that contained a

23 section on "Seizure Risks," which in some way stated that the use of a taser weapon can

24 adversely affect persons at risk for seizures.  See SAC ¶ 32.  The informational material was in

---

26     [3]Indeed, given the allegations of Paragraph 32, Lucas could not allege in good faith that no warnings were
given.  See Total Coverage, Inc. v. Cendant Settlement Servs. Group, Inc., 252 Fed. Appx. 123, 126 (9th Cir. 2007);

27 Adjustment Co. v. Galvin, 86 F.3d 1455, 1461 (7th Cir. 1996); SAC ¶ 32.

28     [4]Paragraph 33 contains allegations that are nearly identical to Paragraph 32.  For convenience, the Court
will simply reference Paragraph 32.

addition to the warning that appears on the taser weapon itself.  See id.  The Court can see how

Paragraph 32 could support the point made by Taser Int.  On the one hand, Lucas is alleging that

Taser Int. did not adequately warn.  See SAC ¶ 79.  On the other hand, Lucas alleges that Taser

Int. gave the City warnings on seizure risks, the City was actually aware of and realized the

seizure risks because of the warnings, but the City acted with deliberate indifference, i.e. did not

act on the warnings, by not training its officers.  See SAC ¶ 32.  If the City realized the particular

identified seizure risks because of the information provided by Taser,[5] see id., then it would

appear that the warnings were adequate.  With adequate warnings, there can be no liability for

negligent warning defects.  See CACI § 1222.

Nevertheless, to the extent that there are inconsistencies between Paragraphs 32 and 79,

the situation is governed by Rule 8(d).  Under Rule 8(d)(3), a "party may state as many separate

claims or defenses as it has, regardless of consistency."  Fed. R. Civ. Pro. 8(d)(3).  Because a

party "may not be sure in advance upon which legal theory she will succeed," Rule 8(d) permits

that party to "set forth two or more statements of a claim or defense alternately or

hypothetically," and to "state as many separate claims or defenses as the party has regardless of

consistency."[6]  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805 (1999).  Rule 8(d)

"permits inconsistency in both legal and factual allegations . . . and has been interpreted to mean

that a court may not construe [a plaintiff's] first claim as an admission against another alternative

or inconsistent claim."[7]  Independent Enters. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165,

1175 (3d Cir. 1997); see also Henry v. Daytop Village, 42 F.3d 89, 95 (2d Cir. 1994);

Molsbergen v. United States, 757 F.2d 1016, 1019 (9th Cir. 1985).  "[A] policy which permits

one claim to be invoked as an admission against an alternative or inconsistent claim would

---

[5]Paragraph 32 identifies other information about seizure risks that was created by the International Association of Chiefs of Policy.  See SAC ¶ 32.  However, there is no allegation that the City had knowledge of this publication/information.

[6]All of the cases cited in relation to Rule 8(d) actually address former Rule 8(e)(2).  As part of the 2007 amendments to Rule 8, Rule 8(e)(2) was deleted and became Rules 8(d)(2) and 8(d)(3).  As the comment to Rule 8 states, "These changes are intended to be stylistic only."  See Comment for 2007 Amendments to Fed. R. Civ. Pro. 8.  Thus, cases interpreting former Rule 8(e)(2) are valid interpretations of current Rules 8(d)(2) and 8(d)(3).  See id.

[7]This is not to say that there are no limits regarding Rule 8(d); all pleadings must be signed consistent with the requirements of Rule 11.  See Total Coverage, 252 Fed. Appx. at 126; Adjustment, 86 F.3d at 1461.

1  significantly restrict, if not eliminate, the freedom to plead inconsistent claims provided by Rule

2  8(e) (2)." Molsbergen, 757 F.2d at 1019; see Aholelei v. Department of Pub. Safety, 488 F.3d

3  1144, 1149 (9th Cir. 2007).  At this point, the Court will view any inconsistency between

4  Paragraphs 32 and 79, i.e. the second and ninth causes of action, as permissible under Rule 8(d).

5  See Fed. R. Civ. Pro. 8(d)(2), (3);  Cleveland, 526 U.S. at 805;  Aholelei, 488 F.3d at 1149;

6  Independent Enters., 103 F.3d at 1175;  Molsbergen, 757 F.2d at 1019.  Dismissal of the ninth

7  cause of action is inappropriate.[8]

8

9  ## CONCLUSION

10      Taser Int. moves to dismiss the ninth and tenth causes of action alleged against it.  With

11  respect to the ninth cause of action, Taser Int.'s argument is essentially that the second and ninth

12  causes of action are fatally inconsistent.  However, at this stage in the proceedings, to the extent

13  that there are inconsistencies, those inconsistencies are permissible under Rule 8(d).  See Fed. R.

14  Civ. Pro. 8(d);  Cleveland, 526 U.S. at 805;  Independent Enters., 103 F.3d at 1175;  Molsbergen,

15  757 F.2d at 1019.  Dismissal is inappropriate.

16      With respect to the tenth cause of action, Taser Int.'s reading is correct.  The SAC alleges

17  only insufficient legal conclusions instead of necessary facts.  See Iqbal, 129 S.Ct. at 1949-50.

18  As explained above, Lucas needs to identify what specific aspect of the taser weapon is defective.

19  That is, to properly allege design and manufacturing defects, Lucas must specifically allege what

20  makes the design defective or what about the particular taser weapon in question deviated from

21  the intended result/design.  See Altman, 2009 U.S. Dist. LEXIS 108971 at *23;  Barker, 20

22  Cal.3d at 429-30;  Karlsson, 140 Cal.App.4th at 1208;  In re Coordinated Latex, 99 Cal.App.4th

23  at 605, 613.  Because it is not clear at that this point that amendment would be futile, dismissal

24

25      [8]Taser Int. states that the ninth cause of action is unclear as to whether Lucas is alleging negligence or strict
   products liability.  However, the ninth cause of action is captioned as "Products Liability – Negligence" and the tenth
26  cause of action is captioned as "Products Liability – Strict Liability."  See SAC at pp. 20, 22.  Also, Lucas states in
   his opposition that the ninth cause of action "alleges that [Taser Int.] is liable for negligently failing to include
27  adequate warnings for its Taser products."  Court's Docket Doc. No. 46 at p. 3:10-11.  The natural reading of the
   SAC is that the ninth cause of action is for negligence based inadequate warning.  In light of the structure and
28  wording of the SAC, as well as Lucas's opposition, the ninth cause of action will be read as containing only an
   inadequate warning claim under the negligence products liability framework.  See Artiglio, 61 Cal.App.4th at 835;
   Putensen, 12 Cal.App.3d at 1076-77; CACI § 1222.

with leave to amend is appropriate.

Accordingly, IT IS HEREBY ORDERED that Defendant's motion to dismiss:

1.  The ninth cause of action in the second amended complaint is DENIED;

2.  The tenth cause of action in the second amended complaint is GRANTED without prejudice to amendment;

3.  Plaintiff may file an amended complaint, consistent with this order, no later than fourteen (14) days after service of this order; and

4.  If Plaintiff fails to file an amended complaint within fourteen (14) days of service of this order, then the dismissal will be automatically converted to a dismissal with prejudice and Defendant Taser International shall file an answer to the second amended complaint, consistent with this order, within twenty-one (21) days of service of this order.

IT IS SO ORDERED.

Dated:    July 20, 2010    

                                                    CHIEF UNITED STATES DISTRICT JUDGE